## LAWLESS ET AL. *vs.* GUELBRETH.

1. Where a person *bona fide*, and for a valuable consideration, purchases slaves from one having a power of attorney from the owner to sell the slaves, the latter cannot avoid the sale on the ground that the power of attorney was fraudulently obtained from him.

2. The fact, that a subscribing witness to a writing was a person of bad character, may influence the jury in determining whether the writing was the act of the person purporting to have exc_ cuted it, but cannot prevent the writing from being admitted in evidence.

## APPEAL from St. Louis Circuit Court.

LAWLESS, *for Appellants.*

GAMBLE, *for Appellee.*— I make the following points : —

1. The bill of sale from Armstead to Tiffin was regularly proved by proving the hand-writing of a deceased subscribing witness, and that the other witness (who being unable to write, made his mark,) was out of the State; the grantor having also signed only by a mark.—1 Starkie, 329.

2. The subsequent evidence given by appellants, of the bad character of the subscribing witness, went to the jury, to influence their consideration of the question of fact, whether Armstead actually executed the bill of sale, and that question was left to them by the instructions of the court; this evidence did not affect the propriety of admitting the deed in evidence.

3. The appellants had all the benefit of all their evidence about fraud or imposition by the three first instructions given for the plaintiffs, and the last instruction given by the court of its own accord, except so far as they claimed to invalidate the title of defendant as a purchaser *bona fide* for valuable consideration, without notice of fraud.

4. The defendant, as such *bona fide* purchaser without notice, was entitled to hold the property against the plaintiffs, and the instruction asked by defendant and given by the court was correct.—5 T. Rep., 175, Parker *vs.* Patrick ; 2 T. Rep., 750, Harwood *vs.* Smith ; 15 Mass. Rep., 156, Buffington *vs.* Gerrish ; 12 Pick. Rep., 307, Rowley *vs.* Bigelow ; 8 Cowen, 238, Mowray *vs.* Walsh.

5. The court did right in refusing the fourth instruction asked by plaintiffs, for the reason, that it is not law as between Armstead and Tiffin ; and, secondly, upon the authorities before cited, it is clearly not law between the plaintiffs and the defendant in this case.

6. The court did right in refusng the plaintiffs' fifth instruction. The instruction refers to a bill of sale, which is not on the record. The power of attorney to Tiffin had no date, and there was no evidence of when it was executed; the

*Lawless et al. vs. Guelbreth.*

instruction refers to a holding of the slaves by Tiffin, without any designation of the time, and relies upon that fact as avoiding the bill of sale to defendant.

Again, a sale made by Tiffin of slaves, which pass without a written conveyance, if he held a power of attorney, and also a bill of sale to himself, would pass the title without any deed, and in whatever form he mi ht think proper to convey.

TOMPKINS, *Judge, delivered the opinion of the Court.*

Armstead Lawless, Hugh Lackey, and John W. Paulding, commenced an action of trespass on the case against Augustin Guelbreth, in the Circuit Court of Saint Louis county, and judgment being there given against them, they appealed to this court.

It appeared in evidence, that some time in the year 1830, Lawless, one of the plaintiffs, had purchased from Samuel Perry some slaves, to recover the value of two of which slaves this action is brought, the two plaintiffs, Lackey and Paulding, having become interested in them together with Lawless.

The plaintiff proved that the defendant had purchased these two slaves from Clayton Tiffin; that some time in the month of May, 1832, a riot occurred in St. Louis, and the plaintiff, Lawless, being then in possession of said slaves sued for in this action, was compelled to pass over into Illinois; that about five or six months after this riot, the slaves in question were seen in the possession of Clayton Tiffin aforesaid. One witness stated, that some days after the riot, he found Lawless in a field in Illinois; that Lawless then told him that Tiffin had obtained some instrument of writing from him, (whether a bill of sale or a power of attorney, the witness did not recollect,) after he had passed over into Illinois, and that Tiffin would give him no money: this witness also stated that Tiffin, about the same time, told him that Lawless owed him money. A power of attorney, without date, was then given in evidence; it was made by Lawless to Tiffin, and acknowledged before a justice of the peace on the 21st day of May, 1832. This power was extensive, and amongst other things, it authorized Tiffin to sell the negroes in question.

The plaintiff having closed his evidence, the defendant produced and read in evidence, by consent of parties, two bills of sale for the slaves, Sarah and Thomas, respectively, from said Tiffin to the defendant. The defendant also read in evidence a bill of sale purporting to be made by Lawless to said Tiffin for three slaves, viz., Charlotte, the mother, and her two children, Sarah and Thomas, the two last the slaves in dispute: this deed is dated 17th May, 1832. This deed was subscribed by Lawless using his mark, and witnessed by Alexander Amelin, who subscribed his name, and another witness, who used his mark, not being able to write.

The hand-writing of the subscribing witness was proved, he being dead, and the other, who could not write, living in the State of Illinois, in the town of Illinois, opposite to St. Louis. Objection was made to the reading of this deed, because of the non-production of the living witness, and because said Alexander Amelin was proved to be a man of very bad character for veracity.

It was further proved, that said Lawless had in June, 1832, admitted that he had let Clayton Tiffin have these negroes, but 'that he did not say whether he permitted Tiffin to hold them as his own, or as his agent.

This evidence being given in, and much more of a most disgusting character, that had very little connection with the merits of the case, the plaintiff moved the court to instruct the jury —

1st. That if they shall find, from the evidence, that the bill of sale from Armstead Lawless, bearing date, &c., was obtained by fraud, they shall find for the plaintiff.

2d. If they shall find, from the evidence, that the bill of sale, &c., was not executed by Armstead Lawless, then they shall find for the plaintiff.

3d. If they shall find, &c., that the bill of sale bearing date, &c., and the power of attorney, purporting to be acknowledged on the 21st of May, 1832, were not executed by Armstead Lawless, or were obtained by fraud from said Armstead Lawless, they shall find for the plaintiff.

These three instructions were given, and the plaintiff then asked the court to give the instructions following : —

4th. If the jury shall find, from the evidence, that the contents of the bill of sale, bearing date, &c., was not read and explained to Armstead Lawless *at and before* he put his mark thereto, the jury ought to find for the plaintiff.

5th. That if they shall find, from the evidence, that Tiffin held the slaves as attorney in fact of Armstead Lawless, the bills of sale from Tiffin to Guelbreth, being in the name of Tiffin alone, give to the defendant no title to the slaves therein named.

These two instructions last prayed were refused. After the three first instructions given by the court, it is not easy to be perceived what object the plaintiff could have in demanding the fourth. To pass over the quaint and equivocal terms used there, "*at* and *before* he put his mark thereto," it may be remarked, that if he, Lawless, had been informed of the contents of the writing at any time before the execution, it was enough, and even if he had not, then the writing was fraudulently obtained, and there could have been no need of the fourth instruction.

On the fifth, it is useless to say any thing. Tiffin, by conveying in this manner, might make himself liable for the title to the slaves sold, but the conveyance is not the less binding on Lawless.

But the whole merits of the case turn on the instruction prayed by the defendant, viz.: "That if the jury find, from the evidence, that Augustin Guelbreth, the defendant, purchased the slaves in the declaration mentioned, from Clayton Tiffin, for a valuable consideration paid by him to said Tiffin, and without any notice of fraud of said Tiffin in procuring said slaves from Armstead Lawless, then the defendant is entitled to hold said slaves against the plaintiffs." This instruction was excepted to by the plaintiffs.

If Tiffin fraudulently obtained the negroes from Lawless, those negroes would at all times, while owned by Tiffin, be recoverable by Lawless. But if Lawless permit them to remain in the hands of Tiffin till he aliened them to Augustin Guelbreth for a valuable consideration, Guelbreth, in the meantime, being ignorant

that they were obtained by fraud from Lawless, the peace of society requires that Guelbreth should hold the property for which he has paid a fair price, and which he has obtained in a fair and honest manner; and Lawless must lose his negroes rather than Guelbreth his money, because he put it into the power of Tiffin to sell them to Guelbreth, with the *prima facie* evidence of good title.—See Parker *vs.* Patrick, 5 Term Rep., 175; Mowrey *vs.* Walsh, 8 Cowen, 238.

The deed of Lawless to Tiffin went to the jury with all the discredit of the witness, whose hand-writing was proved, because he was dead. This it was lawful to do, because the other witness was a resident of Illinois, and the case is not altered by the circumstance of his residing near the dividing line of the two States. (1 Starkie, 329.) And, as it appears from the face of the deed, that the second witness made his mark, and consequently did not know how to write, we may conclude he would not have been able to prove any thing had he been present. The evidence is certainly admissible, and the jury have, on the testimony, found a verdict for the defendant.

It is not seen that the jury has been wrongly instructed by the Circuit Court, nor that its verdict is not supported by the evidence given in the cause.

Its judgment is therefore affirmed.